**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CURTIS HINTON, | ) | CASE NO.  5:26-cv-25 |
| | ) | |
| | ) | |
| Plaintiff, | ) | CHIEF JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | **MEMORANDUM OPINION** |
| SHERIFF KANDY FATHEREE, *et al.*, | ) | **AND ORDER** |
| | ) | |
| | ) | |
| Defendants. | ) | |

*Pro se* plaintiff Curtis Hinton ("Hinton") has filed this civil rights action under 42 U.S.C. § 1983 against Summit County Sheriff Kandy Fatheree ("Fatheree"), Sergeant Travis Fennell ("Fennell"), Deputy Sergeant Timakya Lewis ("Lewis"), Deputy Sergeant Garret Patterson ("Patterson"), Deputy Prakash Dahal ("Dahal"), Deputy Bronkowski ("Bronkowski"), and Nurse White ("White") (collectively "defendants").[1] (Doc. No. 1 (Complaint).) Hinton alleges that defendants subjected him to unconstitutional conditions of confinement and were deliberately indifferent to his serious medical needs. (*Id.*) For relief, Hinton seeks monetary damages, county jail reform, and to be returned to federal custody at Mahoning County Jail. (*See* Doc. Nos. 1, at

---

[1] In screening the complaint under 28 U.S.C. § 1915A, the Court has considered four "Supporting Documents" filed by Hinton post-complaint. (Doc. Nos. 5-1 (Copy of Conversation Reports); 7 (Copy of Conversation Reports); 9 (Copy of Conversation Reports); 10 (Copy of Conversation Reports).) Although filed as "Supporting Documents" rather than incorporated into the body of the pleading, the Court will consider the facts set forth within because they supply factual content underlying the allegations against the named defendants. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Houston v. Lack*, 487 U.S. 266, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988); Fed. R. Civ. P. 10(c) (an exhibit to a pleading is part of the pleading for all purposes). To the extent Hinton intended his post-complaint documents to add defendants unnamed in the caption (*see, e.,g.*, Doc. No. 6 (Memorandum), at 1), the Court does not construe these records as a proper attempt to add parties not named in the caption of the complaint; any individual not named as a defendant is therefore not before the Court, regardless of whether that individual appears in or was specifically circled in a post-complaint filing. *See* Fed. R. Civ. P. 10(a); *McNeil v. United States*, 508 U.S. 106, 113, 113 S. Ct. 1980, 124 L. Ed. 2d 21 (1993); *Myles v. United States*, 416 F.3d 551, 551 (7th Cir. 2005).

3[2]; 8 (Motion for Relief on Complaint), at 1.) But none of Hinton's allegations state a plausible claim for relief. For the reasons stated herein, the Court **DISMISSES** this action pursuant to 28 U.S.C. § 1915(e).

Hinton also filed an application to proceed *in forma pauperis*. (Doc. No. 2.) The application is **GRANTED**.

## I.      BACKGROUND

On January 6, 2026, Hinton filed this civil rights action under § 1983 alleging defendants violated the First and Fourteenth Amendments. (*See generally* Doc. No. 1.) Hinton alleges that as a federal pretrial detainee at Summit County Jail ("SCJ") he was subjected to "inhuman unsanitary living conditions, unsafe conditions." (*Id.* at 1.) His various documents concern the conditions of his confinement and treatment by officials while detained at SCJ. (*See generally* Doc. Nos. 1; 1-2 (Inmate Incident Report); 1-4 (Copy of Conversation Reports); 5-1; 7; 9; 10.)

Hinton claims that SCJ "ha[d] black mold on the walls on the unit and on the tables inside the cell" and that he was housed in "a cell with excrement all over the walls, bed, sink, mat, vent, mirror." (Doc. No. 1, at 1–2.) Hinton states that despite SCJ's substandard conditions, officials "force[d] [him] to clean [his cell]," did not provide him "the proper tools to clean [with]," and after repeatedly leaving his cell to send kites to officials, was eventually "forced back in [his] cell, cuffed for not staying in [the] cell[,] and wr[itten] up." (*Id.* at 1.) Hinton alleges that in response to his wide-ranging kites (*see generally* Doc. Nos. 1; 1-2; 1-4; 5-1; 7; 9; 10), SCJ officials "targeted" him and "singled [him] out" because he was "the only one raising

---

[2] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic filing system.

issues and concerns about the conditions of the Jail and the [g]rievance system being corrupt and closing kites without proper investigations." (Doc. No. 1, at 2.)

Hinton contends that his underlying medical conditions—"asthma and [n]odules on [his] lungs"—were exacerbated by "breathing [in] [e]xcrement" for prolonged periods. (*Id.*) After "breathing in this for days," Hinton contacted the major[3] and "[a]s a result . . . was moved" to a different cell. (*Id.* at 1.) When Hinton used the emergency call button, "medical" responded "but only checked [his] vitals" and informed him that "everything sounds good." (*Id.* at 2.) Hinton states that he "was never taken to a doctor to be evaluated." (*Id.*) Hinton claims that although he told White he "ha[s] internal issues only a M.R.I. machine can see[,]" he was never taken for further examination. (*Id.*) Hinton further alleges that SCJ medical staff failed to adequately treat various of his other medical conditions, including "seizures and high blood pressure" (Doc. No. 7, at 2); ear and jaw pain (*Id.* at 6); an "ingrown toenail" (Doc. No. 9, at 3); "boil[s]" (*Id.*); sleep issues (Doc. No. 10, at 4); and suicidal ideation. (*Id.* at 7.)

## II.      STANDARD OF REVIEW

Federal district courts are expressly required, under § 1915(e), to screen all *in forma pauperis* actions and to dismiss before service any such action that the court determines is frivolous or malicious, fails to state a claim on which relief may be granted, lacks an arguable basis in law or fact, or seeks monetary relief from a defendant who is immune from such relief. *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010); *Neitzke v. Williams*, 490 U.S. 319, 109 S. Ct. 1827, 104 L. Ed. 2d 338 (1989). To survive a dismissal for failure to state a claim under §

---

[3] Hinton never identifies the "major" nor refers to this person again. (*See* Doc. No. 1, at 1 ("The major was contacted after breathing in this for days.").)

1915(e), a *pro se* complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hill,* 630 F.3d at 471; *see id.* at 470–71 (holding that the dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) governs § 1915(e) dismissals).

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Pleadings that merely offer "labels and conclusions," "a formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" are insufficient to survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (citation modified). A claim lacks an arguable basis in law or fact when it is premised on an indisputably meritless legal theory or when the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. The factual allegations in the pleading must be sufficient to "raise a right to relief above the speculative level" on the assumption that all the allegations in the complaint are true. *Twombly*, 550 U.S. 555. The plaintiff is not required to include detailed factual allegations but must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.

In reviewing a complaint, the court "must construe the pleading in a light most favorable to the plaintiff[.]" *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998). *Pro se* pleadings are liberally construed, *Boag v. MacDougall*, 454 U.S. 364, 365, 102 S. Ct. 700, 70 L. Ed. 2d 551 (1982) (per curiam), but the lenient treatment accorded *pro se* pleadings "has limits." *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The "liberal construction" afforded to *pro se* litigants "does not require a court to conjure allegations on a litigant's behalf." *Martin v.*

*Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (citation omitted). "The court will consider documents filed after the complaint 'as part of the pleadings.' However, a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading.'" *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (citing *Flournoy v. Seiter*, No. 98–3535, 1987 WL 24129 (6th Cir. Dec. 7, 1987) (unpublished)).

## III.      DISCUSSION

Hinton asserts unspecified § 1983 claims against the defendants. (*See* Doc. No. 1, at 2 ("I am filing this Complaint under the 14th Amendment of the U.S.C. § 1983 42 [sic].").) "Although inartfully pled," the Court construes Hinton's complaint as alleging a Fourteenth Amendment deliberate indifference to serious medical needs claim against all defendants, alongside a Fourteenth Amendment conditions of confinement and First Amendment retaliation claim against defendants Fatheree, Lewis, Fennell, Patterson, Dahal, and Bronkowski. *Hill*, 630 F.3d at 471.

To state a claim upon which relief can be granted under § 1983, the plaintiff must allege that (1) a right secured by the Constitution or a federal statute has been violated, and (2) the violation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101 L. Ed. 2d 40 (1988); *Baynes v. Cleland*, 799 F.3d 600, 607 (6th Cir. 2015). To succeed on a § 1983 claim, a plaintiff must show that each defendant was personally involved in the activities that form the basis of the alleged unconstitutional behavior. *See Rizzo v. Goode*, 423 U.S. 362, 371, 96 S. Ct. 598, 46 L. Ed. 2d 561 (1976); *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995).

**A.      Defendants Fatheree, Lewis, Fennell, Patterson, Dahal, and Bronkowski**

Where individuals are merely named in the caption as defendants in a civil rights action without supporting allegations of conduct in the body of the complaint, the complaint is subject to dismissal even under the liberal pleading standard afforded *pro se* plaintiffs. *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) ("Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983." (citation omitted)); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (affirming dismissal of a complaint that did not adequately allege which of the named "defendants were personally involved in [or responsible for each] alleged deprivation of federal rights"). Hinton includes no allegations connecting Fatheree, Lewis, Fennell, Patterson, Dahal, or Bronkowski to the purportedly unconstitutional conduct or conditions. (*See generally* Doc. No. 1.) The only references to these six defendants beyond the caption appear in SCJ personnel responses to Hinton's various kites. (*See* Doc. Nos. 1-2, at 1; 1-4, at 1–4; 5-1, at 3–5; 9, at 7–10; 10, at 8.) But in no way do these passing references allege facts evidencing that these defendants may have contributed to any deprivation of Hinton's federal rights. Hinton thus fails to make out a § 1983 claim against Fatheree, Lewis, Fennell, Patterson, Dahal, or Bronkowski.[4]

---

[4] To the extent Hinton asserts a supervisory liability claim, supervisors cannot be held liable for a § 1983 claim "premised solely on a theory of respondeat superior, or the right to control employees." *Heyerman v. County of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (citation omitted). In order to hold a supervisor personally liable under § 1983, "[a] plaintiff must demonstrate that the defendant supervisor 'at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" *Essex v. Cnty. of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013) (citation omitted). Hinton's factual allegations do not support an inference that Fatheree or any other SCJ supervisor "authorized, approved, or knowingly acquiesced" to the alleged unconstitutional conditions or conduct. *See id.*

### B.  Defendant White

The only defendant Hinton identifies in the body of his complaint is White.[5] Hinton appears to claim that White was deliberately indifferent to his serious medical needs and thus liable under § 1983. (Doc. No. 1, at 1–2.) Hinton's documents recount myriad purported failures to treat his medical needs, but none are connected to White except those set forth in the body of the complaint. *Compare* (*id.*) *with* (Doc. Nos. 5-1; 7; 9; 10 (in fact White is not party to or even referenced in any of Hinton's "Supporting Documents").)

Under the Fourteenth Amendment's Due Process Clause, Hinton, as a pretrial detainee, "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979) (collecting cases); *see Brawner v. Scott Cnty., Tennessee*, 14 F.4th 585, 591–92 (6th Cir. 2021). "The due process clause of the Fourteenth Amendment requires government officials to provide adequate medical care to pretrial detainees and others in their custody who are not serving a sentence." *Heeter v. Bowers*, 99 F.4th 900, 915 (6th Cir. 2024) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L. Ed. 2d 605 (1983)). Hinton therefore "ha[s] a constitutional right to be free from deliberate indifference to [his] serious medical needs." *Howell v. NaphCare, Inc.*, 67 F.4th 302, 310 (6th Cir. 2023). "Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle v. Gamble*, 429 U.S. 97, 104–05, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976).

---

[5] White is not explicitly mentioned in the body of the complaint. (*See generally* Doc. No. 1.) But Hinton does refer to a female "medical" who he spoke to after he pressed the emergency call button. (*See id.* at 2.) The Court construes this as referring to "Nurse White" named as a defendant in the complaint's caption.

"Deliberate indifference consists of two prongs, one objective and the other subjective[.]" *Hodges v. Abram*, 138 F.4th 980, 987 (6th Cir. 2025). For the objective prong, a plaintiff must show that their medical need was "sufficiently serious." *See id.* (quoting *Brawner*, 14 F.4th at 591). For the subjective prong, a plaintiff must show that a defendant "not only acted deliberately (not accidentally), but also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Brawner*, 14 F.4th at 596 (quoting *Farmer v. Brennan*, 511 U.S. 825, 836, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)); *but see Trozzi v. Lake Cnty., Ohio*, 29 F.4th 745, 760 (6th Cir. 2022) ("[A] deliberate-indifference claim still requires a defendant's *actual knowledge* of the risks arising from non-intervention." (emphasis added)).[6]

Even assuming Hinton can meet the objective prong,[7] he fails to plead a Fourteenth Amendment violation because his complaint fails to include any allegations that White's conduct was intentional or reckless. To plead the subjective prong of a deliberate indifference claim, Hinton must allege "that Nurse [White's] action (or lack of action) was intentional (not accidental) and she either (a) acted intentionally to ignore [his] serious medical need, or (b) recklessly failed to act reasonably to mitigate the risk the serious medical need posed to [him], even though a reasonable official in Nurse [White's] position would have known that the serious

---

[6] The *Trozzi* court implicitly departs from *Brawner*'s formulation of the subjective prong for deliberate indifference. *See Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 316 (6th Cir. 2023) (concluding that the court's "framing of the [deliberate indifference] elements" in *Trozzi* are "irreconcilable with *Brawner*"). The Sixth Circuit "sitting en banc has now decided to reconsider the standards governing Fourteenth Amendment claims. *See Poynter ex rel. Fernandez v. Bennett*, 169 F.4th 716 (6th Cir. 2026) (en banc) (order)." *Griswold v. Trinity Health Michigan*, 175 F.4th 706, 710 (6th Cir. 2026). Regardless of whether the Court applies the more lenient *Brawner* standard or the more stringent *Trozzi* standard, Hinton fails to plead a Fourteenth Amendment deliberate indifference claim.

[7] A plaintiff can demonstrate the existence of a serious medical need "for example, by showing that a doctor has diagnosed a condition as requiring treatment or that the prisoner has an obvious problem that any layperson would agree necessitates care." *Phillips v. Tangilag*, 14 F.4th 524, 534 (6th Cir. 2021).

8

medical need posed an excessive risk to [Hinton's] health or safety." *See Brawner*, 14 F.4th at 597 (citation modified).

White unquestionably provided Hinton with medical care. White responded to Hinton's triggering of the emergency call button, checked his vitals, and determined that "everything sounds good[.]" (Doc. No. 1, at 2.) Hinton's objection to the adequacy of White's treatment, suggesting that his condition required an MRI—"[a]gain I told her I have internal issues only a M.R.I. machine can see" (*id.*)—does not suggest White "intentionally ignore[ed] his serious medical needs." *Brawner*, 14 F.4th at 597. At most, Hinton's complaint indicates disagreement with the adequacy of White's treatment.

But mere disagreement with the adequacy of treatment cannot be construed as deliberate indifference. *Ward v. Smith*, 100 F.3d 958 (Table) (6th Cir. 1996) ("[D]ifferences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis or treatment are not enough to state a deliberate indifference claim." (citation omitted)). When medical staff provide treatment, "albeit carelessly or inefficaciously, to a prisoner, [they] ha[ve] not displayed a deliberate indifference to the prisoner's needs, but merely a degree of incompetence which does not rise to the level of a constitutional violation." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001); *see also Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) ("Where a prisoner alleges only that the medical care he received was inadequate, 'federal courts are generally reluctant to second guess medical judgments.' However, it is possible for medical treatment to be 'so woefully inadequate as to amount to no treatment at all.'" (citation omitted)).

Hinton's suggestion that White did not adequately treat his medical needs when she responded to his emergency call does not constitute intentionality or the level of recklessness necessary to support a deliberate indifference claim. Hinton's complaint includes no supporting allegations explaining how White's decision not to order an MRI evidenced an intent to ignore his serious medical need or a reckless failure to mitigate a serious medical risk. Even if White's treatment of Hinton was negligent, "[m]ere negligence is insufficient" to support a deliberate indifference claim. *Brawner*, 14 F.4th at 597. Hinton has not alleged facts sufficient to state a claim that White's treatment constituted a "deliberate indifference to [his] serious medical needs" in violation of the Fourteenth Amendment. *See Howell*, 67 F.4th at 310. He therefore fails to state a § 1983 claim against White.

## IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** plaintiffs' application to proceed *in forma pauperis* (Doc. No. 2) and **DISMISSES** the action pursuant to 28 U.S.C. § 1915(e)(2). Further, the Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

**IT IS SO ORDERED**.


Dated: July 27, 2026

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**